Filed 12/17/24  P. v. Phang CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>VINH THE PHANG,<br><br>Defendant and Appellant. | A169398<br><br>(Sonoma County<br>Super. Ct. No. SCR-14675-1) |

Vinh The Phang was convicted by a jury of first degree murder (Pen. Code, § 187, subd. (a)) and sentenced to 25 years to life in prison.[1]

Phang sought resentencing under section 1172.6.[2]  After issuing an order to show cause on the petition and conducting an evidentiary hearing, the trial court denied the resentencing petition as it found beyond a reasonable doubt that Phang could still be convicted of first degree murder. On appeal, Phang challenges the sufficiency of the evidence to support the court's findings.  We affirm.

---

[1] All further statutory references are to the Penal Code.

[2] Effective June 30, 2022, the Legislature renumbered section 1170.95 to section 1172.6, with no substantive changes in the statute.  (Stats. 2022 (2021–2022 Reg. Sess.) ch. 58, § 10.)  We cite to section 1172.6 throughout this opinion for ease of reference.

## FACTUAL AND PROCEDURAL BACKGROUND

The procedural summary is taken from the opinion from Division Two of this court in Phang's direct appeal (*People v. Phang* (Aug. 4, 1989, A042181) [nonpub. opn.] (*Phang I*)) and our more recent opinion on Phang's petition for resentencing at the prima facie stage (*People v. Phang* (Dec. 8, 2022, A165099) [nonpub. opn.] (*Phang II*)).

The factual summary, however, is based on the evidence adduced at Phang's trial which was considered by the trial court. We limit our summary to those facts relevant to the issue on appeal, namely, whether the trial court erred in denying Phang's section 1172.6 resentencing petition.[3]

*General Background*

In 1987, Phang was charged by information with first degree murder (§ 187, subd. (a)) for the killing of Johnny Fong, a wealthy businessman from Hong Kong whose brother was married to Phang's sister. The information contained a section 12022.5 allegation that Phang personally used a firearm in the commission of the offense.

A jury trial took place in early 1988. The jury found Phang guilty of first degree murder but found not true the section 12022.5 allegation.

*Trial Evidence*

Fong was a wealthy businessman who lived primarily in Hong Kong but spent a few weeks per year at his family's estate in Hillsborough, California. Fong owned a brown BMW that he kept parked in the driveway of the Hillsborough estate when he was not in town. He was known to carry a wallet with him that at times contained large sums of cash up to $2,000.

---

[3] For purposes of our analysis, we, like the trial court, do not take from or rely on the factual histories set forth in either of the prior opinions. (See *People v. Clements* (2022) 75 Cal.App.5th 276, 292–293.)

Fong was also known to wear a gold Rolex watch on his left wrist when he resided in Hillsborough.

Fong's brother was married to Phang's sister. On three separate occasions between 1981 and 1983, Phang stayed with members of the Fong family at their Hillsborough estate (where Fong's BMW was generally parked in the driveway). Phang met Fong in 1982 at the Hillsborough estate during one of Fong's trips from Hong Kong.

In December 1986, Phang very briefly worked at a restaurant in Missouri. In March 1987, the restaurant owner's house was burglarized. Among the items taken in the burglary were a Browning .380 automatic gun and ammunition, as well as the checkbook of a student who was living in the house. The afternoon of the burglary, Phang went to multiple banks to cash or attempt to cash the student's stolen checks, for which Phang was charged with two counts of forgery in Missouri.

Unless otherwise noted, all subsequent dates refer to 1987.

By April, Phang had returned to the West Coast and was with his sister in Seattle. On April 30, Phang rented a car in Seattle with unlimited mileage. On May 8, Phang was pulled over in that rental car and cited for speeding on a highway near Fresno, California. Phang told the officer he was driving to Los Angeles.

On May 11, Fong returned to the United States from Hong Kong and arrived at his family's Hillsborough estate. He spent the night of May 16 at his friend's house; Fong and his friend agreed that Fong would sell his BMW to the friend on May 21 at the friend's place of work in Petaluma. Only one other person (not involved in the events recounted here) knew of that plan.

3

On May 19, Phang was again cited for speeding, this time on Highway 101 less than two miles from the Hillsborough estate. Phang told the officer he was on the way to the airport and appeared to be in a rush.

On May 21, Fong left the Hillsborough estate for Petaluma in the BMW around 9:00 a.m. Fong was carrying his wallet and wearing his Rolex watch, then worth around $5,000. Fong's friend was at his place of work in Petaluma expecting Fong to arrive in the BMW around 10:15 a.m.; he looked outside at that time and did not see Fong or his BMW.

Around 10:30 a.m., an employee at the Petaluma office noticed a person underneath a brown BMW in the parking lot and went outside to investigate. The employee found Fong face down in a pool of blood with his left arm twisted away at an angle. Fong was later pronounced dead. Two spent .380 shell casings were found nearby. Fong's wallet and Rolex watch were not found at the scene or on his person. There were no eyewitnesses to Fong's death.

An autopsy revealed Fong had been shot twice in the back of the neck. The bullets passed through the base of his skull, severing his brain stem and killing him instantly. Both wounds were contact wounds, meaning that the muzzle of the firearm was pressed against his skin at the moment of discharge. The forensic evidence indicated his head was against the pavement when he was shot.

From May 18 through May 22—both before and after Fong's May 21 killing—Phang stayed at a motel in San Francisco with his brother, Cuong The Phang, and another man they had met recently in Los Angeles, Phan Say Phang.[4] There was no evidence at trial that either Cuong or Phan had

_____

[4] For ease of comprehension, we refer to Cuong The Phang as "Cuong" and Phan Say Phang as "Phan."

met Fong, had stayed at the Hillsborough estate, or was familiar with the BMW.

On May 28, one week after the killing, Phang attempted to cross the border into Canada from Washington State with Cuong and Phan. Their vehicle was referred for a search by Canadian customs officials. During the search, officers found a loaded Browning .380 gun—with the same serial number as the one stolen in the Missouri burglary—in the trunk and extra .380 ammunition under one of the seats. Subsequent testing revealed the Browning .380 was the gun used to kill Fong. Officers also found a briefcase in the trunk that contained a gold Rolex watch; the watch was later determined to be Fong's. Inside that same briefcase, officers also found other items stolen during the Missouri burglary, as well as Phang's speeding citations noted above.

Phang was placed under arrest for smuggling the gun. When the arresting officer took handcuffs out of his pocket, Phang fled on foot toward the border. He was later caught by U.S. Customs agents. Cuong and Phan did not attempt to flee.

*Jury Instructions, Verdict, Sentence, and Direct Appeal*

The prosecution theory was that Fong had been stalked from the Hillsborough estate to Petaluma to be robbed and that he was executed to prevent him from identifying Phang, whom he knew, as his assailant. (*Phang I*, *supra*, at p. 5.) The jury was instructed on three theories of first degree murder: (1) Phang was the direct perpetrator of the murder; (2) he was a direct aider and abettor of the murder; and (3) he was guilty under a felony murder theory, with robbery as the underlying felony. The jury was not instructed on the (now invalid) natural and probable consequences theory of aiding and abetting.

The jury found Phang guilty of first degree murder. However, it did not find true the section 12022.5 allegation that Phang personally used a firearm in the commission of the offense.[5]

The trial court sentenced Phang to 25 years to life in prison. In 1989, Division Two of this court affirmed Phang's conviction on direct appeal. (*Phang I*, *supra*, at p. 12.)

*Resentencing Petition Proceedings*

In 2021, Phang petitioned for resentencing under section 1172.6. (*Phang II*, *supra*, at p. 4.) He asserted in relevant part that he was charged and convicted of murder under either the felony murder law or the natural and probable consequences doctrine, and that he could not currently be convicted of first degree felony murder because of changes to section 189 as he was not the actual killer, did not aid and abet the actual killer in the commission of murder in the first degree, and was not a major participant in the felony or did not act with reckless indifference to human life. (*Id.* at pp. 3–4.) The trial court denied the petition on the basis that Phang had not made a prima facie case showing he was entitled to resentencing. (*Id.* at p. 4.)

In 2022, we reversed and remanded for the trial court to issue an order to show cause and conduct a hearing pursuant to section 1172.6, subdivision (d), as Phang's petition was facially sufficient and alleged the essential facts necessary to establish a prima facie showing of eligibility for relief. (*Phang II*, *supra*, at pp. 8–9.)

---

[5] As to the allegation, the verdict form read: "We, the Jury, further find that said Defendant personally ~~used~~/did not use a firearm, to wit, a .380 Cal. Pistol, within the meaning of Penal Code Section 12022.5."

Upon remand, in 2023, the trial court issued an order to show cause and set a hearing under section 1172.6, subdivision (d). The prosecution filed a return to the order to show cause, asserting the evidence showed Phang was guilty of first degree murder under a theory of law that remained valid, either as a direct aider and abettor of Fong's murder or under a felony murder theory.

On September 5, 2023, the trial court held the section 1172.6 evidentiary hearing. Without objection, the prosecution introduced the following evidence at the hearing: (1) the criminal complaint; (2) the preliminary hearing transcripts; (3) all exhibits introduced at the preliminary hearing; (4) the Information; (5) the jury trial transcripts; (6) all exhibits introduced at the jury trial; (7) the jury instructions given; (8) the jury verdicts; (9) all stipulations reached during the prosecution of the case; and (10) the abstract of judgment. Neither party presented new evidence at the hearing. The prosecution asserted Phang was the "linchpin" of the plan to rob and kill Fong and was critical to the planning and execution, having set it in motion and provided the murder weapon. It argued he was guilty of first degree murder under current law as the direct aider and abettor or under a felony murder theory as a major participant who acted with reckless indifference to human life.

On December 4, 2023, the trial court denied the resentencing petition. In its order, the court made factual findings based on its assessment of the trial evidence, consistent with the above factual recitation. Based on those facts, the trial court found Phang guilty beyond a reasonable doubt of first degree murder on two independent bases valid under current law: (1) as a direct aider and abettor of the murder, and (2) under a felony murder theory.

First, the court found the evidence, although largely circumstantial, showed Phang directly aided and abetted the murder under an express malice theory:[6]

> "The evidence indicates that petitioner was instrumental in planning the robbery and murder. It was petitioner who knew the victim, knew that he had money and valuables to steal, and knew where Mr. Fong lived and what kind of vehicle he drove. It was petitioner who had the means and opportunity to commit the robbery and murder. There is circumstantial evidence that petitioner was at the scene of the murder, as he was the one familiar with Mr. Fong and his presence would be instrumental in identifying Mr. Fong as the target of the crime. Additionally, petitioner was in possession of Mr. Fong's Rolex watch when he was apprehended at the Canadian border, further indicating that petitioner was present at the scene of the murder. Petitioner was also in possession of the murder weapon and matching ammunition before and after the murder, and petitioner had previously obtained the firearm by way of a burglary months earlier. Thus, it is sufficiently clear that petitioner provided the murder weapon and the ammunition to be used, and that petitioner was present at the scene of the murder.
>
> "The evidence indicates that the motive of the murder was robbery, and that petitioner's participation was necessary because he was the one who could recognize the victim and his car. The evidence indicates that, in the days prior to the murder, petitioner engaged in stalking/surveillance of Mr. Fong, as petitioner was cited for speeding within a couple of miles of Mr. Fong's residence.
>
> "The evidence indicates that the murder was a premeditated and intentional execution style murder, and that the plan was for it to be an execution style murder, and that petitioner shared the intent to commit a premeditated murder. Since petitioner and Mr. Fong were relatives and familiar with each other, the reasonable inference is that the execution style shooting of Mr. Fong was done to prevent Mr. Fong from being able to identify petitioner as one of the principles in the robbery. Thus, the evidence indicates that petitioner shared the premeditated intent to kill. For purposes of

---

[6] The court did not reach the issue of whether Phang was guilty under an implied malice theory of aiding and abetting.

8

finding guilt, this Court need not specifically identify who was the 'actual shooter.'

"The evidence further indicates that petitioner's flight to Washington State and to Canada after the murder was because he had participated in the commission of the murder as a direct aider and abettor with express malice. The evidence also indicates that the reason petitioner sought to flee upon being apprehended at the border was because he knew evidence seized from his vehicle tied him directly to the murder."

Second, the court found Phang guilty under a felony murder theory because he was a major participant in the robbery and acted with reckless indifference to human life, as defined under current law. The court found he played a major role in planning the robbery, provided the gun, was present at the scene, and chose not to call it off. On appeal, Phang does not contest the trial court's finding that he was a major participant.

As to reckless indifference, the court found:

"Petitioner knew that the gun he had stolen would be used during the robbery. Petitioner was at the scene of the murder and had an opportunity to stop both the robbery and the murder. As indicated earlier, this Court finds that execution style murder was planned as part of the robbery to avoid the robbery victim identifying petitioner. Thus, petitioner was aware of the likelihood of a killing during the robbery. Petitioner made no efforts to minimize the possibility of violence during the robbery and did not render any aid to the victim after the shooting. Under these circumstances, the Court finds that petitioner acted with 'reckless indifference' to human life."

9

Phang contends substantial evidence does not support the trial court's finding that he is guilty of first degree murder under current law. We disagree and affirm.

## I. Applicable Law

"Effective January 1, 2019, the Legislature passed Senate Bill 1437 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Lewis* (2021) 11 Cal.5th 952, 959.) The Legislature accomplished this in part by amending statutes related to the felony murder rule (§ 189) and the natural and probable consequences doctrine (§ 188).[7] (*Lewis*, at p. 959.)

Section 189, as amended, limits liability under a felony murder theory to "actual killer[s]" (§ 189, subd. (e)(1)), those who, "with the intent to kill," aid or abet "the actual killer in the commission of murder in the first degree" (*id.*, subd. (e)(2)), and those who were "major participant[s] in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2" (*id.*, subd. (e)(3)). (*People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*).)

Senate Bill 1437 also created a procedure for those previously convicted of murder under the former law to seek retroactive relief under the law as amended by filing a petition under section 1172.6. (*Strong, supra*, 13 Cal.5th

---

[7] The amendment to section 188 is not at issue here as the jury was not instructed on the natural and probable consequences theory at Phang's trial, as previously noted.

at p. 708; § 1172.6.) To obtain relief under section 1172.6, a person convicted of felony murder or murder under the natural and probable consequences doctrine must show in relevant part that he "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3).)

In ruling on a resentencing petition, the trial court determines whether the prosecution proved beyond a reasonable doubt that the defendant is guilty of murder under a theory that remains valid after the amendments to the substantive definition of murder. (§ 1172.6, subd. (d)(3); *People v. Vargas* (2022) 84 Cal.App.5th 943, 952 (*Vargas*)).

We review the trial court's factual findings for substantial evidence and the court's application of the law to those facts de novo. (*People v. Wilson* (2023) 90 Cal.App.5th 903, 916.) Under the substantial evidence standard, " ' "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.] We determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " (*Vargas, supra*, 84 Cal.App.5th at p. 951.) In making that determination, we presume every fact in support of the judgment the trier of fact could reasonably deduce from the evidence. (*Ibid.*)

"Substantial evidence . . . ' "includes circumstantial evidence and any reasonable inferences drawn from that evidence." ' " (*Vargas, supra*, 84 Cal.App.5th at p. 951.) Hence, regardless of whether the prosecution relied upon direct or circumstantial evidence, "if the trier of fact's determination is

11

supported, reversal is not warranted, even where ' " 'the circumstances might also reasonably be reconciled with a contrary finding.' " ' " (*People v. Hill* (2024) 100 Cal.App.5th 1055, 1066.)

With this legal framework in mind, we address the trial court's finding that Phang could still be convicted of first degree murder on a felony murder theory and conclude it is supported by substantial evidence. Accordingly, we shall affirm on that basis, and we do not address the court's aiding and abetting finding.

## II. Felony Murder – Major Participant Acting with Reckless Indifference

First degree felony murder occurs when a murder is committed in the perpetration of, or attempt to perpetrate, certain enumerated felonies, including robbery. (§ 189, subd. (a).) As previously noted, a defendant can be convicted of first degree felony murder under current law if he was a major participant in the underlying enumerated felony and acted with reckless indifference to human life. (*Id.*, subd. (e)(3).)

When the Legislature amended section 189 pursuant to Senate Bill 1437 to incorporate the major participation and reckless indifference requirements into the felony murder doctrine, it codified the California Supreme Court's interpretations of the major participant requirement in *People v. Banks* (2015) 61 Cal.4th 788 and the reckless indifference requirement in *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). (*Strong, supra*, 13 Cal.5th at p. 710.) As Phang concedes there was substantial evidence that he was a major participant in the robbery that led to the murder, we address his challenge to the court's reckless indifference finding.

"Reckless indifference to human life is 'implicit in knowingly engaging in criminal activities known to carry a grave risk of death.' " (*In re Scoggins*

12

(2020) 9 Cal.5th 667, 676.) This "encompasses both subjective and objective elements." (*Clark*, *supra*, 63 Cal.4th at p. 617.) The subjective element concerns a defendant's "conscious disregard of risks known to him." (*Ibid.*) The objective element concerns whether that disregard " 'involved a gross deviation from the standard of conduct that a law-abiding person in the actor's situation would observe.' " (*Ibid.*)

In *Clark*, the Court identified the following nonexhaustive considerations when determining whether a defendant acted with reckless indifference to human life, including: whether he knew a weapon would be used or used a weapon himself; whether he was physically present at the crime and had an opportunity to restrain the crime or aid the victim; the duration of crime; whether he knew of a cohort's likelihood of killing; and whether he attempted to minimize the risk of violence during the felony. (*Clark*, *supra*, 63 Cal.4th at pp. 618–623.) " '[T]he greater the defendant's participation in the felony murder, the more likely that he acted with reckless indifference to human life.' " (*Id.* at p. 615.)

Phang contends he did not act with reckless indifference to human life primarily based on his assertion that the evidence plausibly showed that he was not present at the scene of the murder and instead gave the .380 Browning gun to Phan and Cuong for them to merely rob Fong, without planning to kill him. However, presuming every fact in support of the judgment the trial court could reasonably deduce from the evidence (*Vargas*, *supra*, 84 Cal.App.5th at p. 951), substantial evidence supports the court's finding of reckless indifference.

The court reasonably determined the evidence showed Phang was "instrumental" in planning the robbery, as he was the only one of out of Phan, Cuong, and himself who knew Fong, was aware he carried money and

13

valuables to steal, and knew where Fong lived and what kind of vehicle he drove. There was also ample evidence to support the court's finding that Phang provided the .380 Browning gun he had previously stolen to be used during the robbery. Phang was apprehended at the border with the .380 gun used to kill Fong and Fong's Rolex watch one week after the incident and attempted to flee when arrested, which the court reasonably found was evidence of his guilt. Further, there is substantial evidence to support the court's finding that the perpetrators committed an "execution style murder" based on the autopsy showing that Fong was lying face down on the pavement when he was shot twice in the back of the neck and instantly killed.

These facts were sufficient to conclude Phang knowingly engaged in a criminal activity known to carry a grave risk of death. (*In re Scoggins*, *supra*, 9 Cal.5th at p. 676.) Phang's planning and involvement were indispensable to the robbery. He not only knew a gun would be used but provided that gun. (See *Clark*, *supra*, 63 Cal.4th at p. 618.) The "execution style murder" also indicates the killing was not merely a result of an unexpected struggle during the robbery but an instance where Fong's death was either planned or, at the very least, likely to occur. (See *id.* at p. 621.) Additionally, even crediting Phang's assertion that the evidence did not conclusively show he was at the scene of the crime, his lack of presence would not preclude a finding that he acted with reckless indifference. (See *id.* at p. 618 [noting " 'no one of these considerations is necessary' " for a finding of reckless indifference].)

In sum, viewing the evidence in the light most favorable to the prosecution, as we must, we conclude a rational trier of fact could find that Phang acted with reckless indifference to human life by consciously disregarding known risks of robbing a family member, and grossly deviating

14

from the standard of conduct of a law-abiding person by planning the scheme, providing the gun, and participating significantly in a robbery that led to an execution style murder.  (See *Clark*, *supra*, 63 Cal.4th at pp. 615, 617; *Vargas*, *supra*, 84 Cal.App.5th at p. 951.)  Accordingly, we reject Phang's challenge to the court's reckless indifference finding.

As the trial court's felony murder finding was alone sufficient to deny Phang's resentencing petition, we need not, and do not, reach the court's finding that Phang was guilty of murder on an express malice aiding and abetting theory.

## DISPOSITION

The order denying Phang's section 1172.6 resentencing petition is affirmed.

_____
PETROU, J.

WE CONCUR:


_____
TUCHER, P. J.


_____
FUJISAKI, J.


A169398/*People v. Phang*

16